UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAURA ANNE WEYMOUTH,

    Plaintiff,

v.                                       CASE NO. 8:13-cv-002214-T-27MAP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action for review of the administrative denial of disability insurance benefits ("DIB") and supplemental security income ("SSI") payments. *See* 42 U.S.C. §§ 405(g); 1383(c)(3). In her memorandum, Plaintiff raises four issues: 1) whether the Administrative Law Judge ("ALJ") erred by failing to find Plaintiff's depression and anxiety severe impairments; 2) whether the ALJ improperly assessed Plaintiff's residual functional capacity ("RFC"); 3) whether the ALJ improperly evaluated Plaintiff's credibility; and 4) whether the ALJ erred at step four and step five. After considering the parties' briefs and the administrative record, I conclude that the Commissioner's decision is in accordance with the law and supported by substantial evidence. I therefore recommend the Commissioner's decision be affirmed.[1]

*A. Standard of Review*

To be entitled to DIB or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

---

[1] The matter is referred to me for a report and recommendation pursuant to Local Rule 6.01(c)(21).

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (i.e., one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

*B. Background*

Plaintiff was forty-nine years old at her administrative hearing (R. 211). She completed the ninth grade and had previous work experience as a janitor, cashier, merchandise marker, and retail coordinator (R. 54-55, 82). Plaintiff filed for DIB and SSI on July 16, 2010, alleging disability beginning on February 18, 2010, due to neck problems, anxiety and depression (R. 187, 191, 215). And after conducting an administrative hearing, the ALJ issued an unfavorable decision denying her claim for DIB and SSI (R. 25-36). In his decision, the ALJ found at step two of the sequential analysis that Plaintiff suffered from severe impairments of degeneration of the cervical intervertebral disc with a history of cervical spine surgery, hypertension, occasional angina pectoris NEC, chronic airway obstruction, chronic obstructive pulmonary disease, and unspecified venous (peripheral) insufficiency; however, at step three the ALJ concluded that none of these impairments qualified as a listed impairment in C.F.R. Part 404, Subpart P, Appendix 1 (R. 27-29). He also specifically found that Plaintiff's claimed mental impairments — depression and anxiety — were not severe singly or in combination with her other impairments as they did not cause more than minimal limitations in

3

her ability to perform basic mental work activities (R. 28). The ALJ then assessed Plaintiff retained the functional capacity to perform light work, except that Plaintiff could

> lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; the [Plaintiff] remains able to stand and/or walk, off and on, for a total of approximately 6 hours of an 8-hour day and sitting for about 6 hours a day, sitting for a total of approximately 6 hours of an 8-hour day, with normal breaks. The [Plaintiff] can never operate foot controls, climb ladders, ropes, or scaffolds, kneel, or crawl. The [Plaintiff] remains able to work in those occupations that can be performed while wearing a neck collar. The [Plaintiff] remains able to occasionally reach overhead and frequently otherwise reach. The [Plaintiff] must avoid concentrated exposure to extremes of cold, heat, wetness, and humidity. The [Plaintiff] must avoid even moderate exposure to excessive vibration, environmental irritants such as fumes, odors, dust, gases, and poorly ventilated areas, the use of moving machinery, and exposure to unprotected heights.

(R. 30). At step four, aided by the testimony of the vocational expert, the ALJ determined Plaintiff could still perform her past relevant work as a cashier and merchandise marker, and alternatively, was capable of performing other jobs existing in the national economy (R. 34). Consequently, the ALJ found Plaintiff was not disabled (R. 35). Plaintiff, who has exhausted her administrative remedies, filed this action.

*C. Discussion*

In this appeal, Plaintiff raises four issues: 1) the ALJ failed to find Plaintiff's depression and anxiety severe impairments; 2) the ALJ failed to properly evaluate Plaintiff's RFC; 3) the ALJ failed to properly assess Plaintiff's credibility; and 4) the ALJ failed in his analysis at step four and five. I find each of these arguments insufficient and conclude that the ALJ's decision is supported by substantial evidence.

*1. severe impairments*

For Plaintiff's first issue, Plaintiff contends the ALJ erred by not finding her depression and anxiety severe impairments. Plaintiff asserts the evidence of record demonstrates that Plaintiff's depression and anxiety were severe impairments because they met the duration requirements and both significantly impact Plaintiff's work abilities. In support, Plaintiff argues that the ALJ should have given more weight to her treating physician, Dr. Eric Ranon's, mental capacity assessment because in that assessment, Dr. Ranon opined that Plaintiff's depression and anxiety caused moderate limitations in her ability to maintain attention and concentration and remember locations and work-like procedures. The Commissioner, to the contrary, maintains that substantial evidence supports the ALJ's findings as to Plaintiff's severe impairments and that Dr. Ranon's findings were appropriately given no weight.

Step two requires only that the ALJ determine whether Plaintiff suffers from at least one severe impairment. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (holding "the finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is enough to satisfy step two). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) (citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

Here, the ALJ found several severe impairments (degeneration of the cervical intervertebral disc with history of cervical spine surgery, hypertension, occasional angina pectoris NEC, chronic airway obstruction, chronic obstructive pulmonary disease, and unspecified venous (peripheral) insufficiency) (R. 27), which satisfies the step two inquiry. In reaching this finding, the ALJ

specifically considered Plaintiff's other impairments including Plaintiff's depression and anxiety. In fact, the ALJ concluded that Plaintiff's "mental impairments are nonsevere considered singly and in combination, as they do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." (R. 28).  When making this assessment, the ALJ noted that despite several of Plaintiff's physicians diagnosing Plaintiff with depression and anxiety, including her treating psychiatrist, Dr. Vidyasagar R. Vangala, Plaintiff was found to have "normal behavior, linear and coherent thought process, orientation, intact attention span and concentration, good insight, and intact memory" and was mostly prescribed medication for treatment (R. 28).  The ALJ also considered the four broad functional areas set out in the disability regulations for evaluating mental disorders (R. 28-29).  For example, in the first area, activities of daily living, the ALJ determined that Plaintiff had no limitations and was reportedly able to complete errands, care for pets, and prepare her own meals (R. 28).  In the second area, social functioning, the ALJ reported difficulties getting along with others but none of Plaintiff's treatment records documented abnormal behavior (R. 28-29).  In the third area of concentration, persistence, or pace, the ALJ noted Plaintiff's allegations she had difficulties concentrating but noted that almost all of Dr. Vangala's progress notes documented that Plaintiff had intact memory, attention span, and concentration (R. 29).  And in the last area, episodes of decompensation, the ALJ found there was no evidence of any episode of decompensation (*Id.*).

The ALJ's findings are supported by substantial evidence.  As noted by the ALJ, although Plaintiff was diagnosed with anxiety and depression in several treatment records, there is no indication that these mental impairments caused more than minimal limitations to Plaintiff's work abilities.  Shortly before Plaintiff's onset date, Dr. Claudio Manubens noted that Plaintiff was

6

oriented times three, in no acute distress, and her cognitive function was normal (R. 338). Plaintiff was also noted as having no mood swings or psychotic features and her insight, memory, and judgment were listed as good (R. 389). Dr. Vangala's mental examinations revealed that at almost every appointment Plaintiff was well-groomed, well-dressed, had no involuntary movements, normal behavior, fluent language, appropriate affect, linear thought process, no suicide plans, and no hallucinations despite her having an anxious or sad mood and some obsessional thoughts (R. 554-60, 610). Plaintiff was also listed as having an intact attention span and concentration, fund of knowledge, and judgment (*Id.*). Her insight was good, gait was normal, memory was intact, and her intellectual functioning was also normal (*Id.*). And while her demeanor was listed as sad and she had symptoms of anxiety, Plaintiff had no signs of hyperactive or attentional difficulties, her associations were intact, her thinking was logical, and her thought content was appropriate (R. 562). The state medical consultants, Catherine Nunez and David L. Kirk, also opined that Plaintiff had no severe mental impairment (R. 612, 635). Thus, substantial evidence supports the ALJ's conclusion that Plaintiff's depression and anxiety were nonsevere impairments.

Furthermore, I find the ALJ properly gave Dr. Ranon's opinion as to Plaintiff's mental capacity no weight. Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation and quotations omitted). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.*, *quoting Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons"

7

for doing so. *Id*. (citation and quotations omitted).

Dr. Ranon opined that Plaintiff would have moderate limitations in the ability to remember locations and work-like procedures, understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, complete a normal workday without interruptions from psychologically based symptoms, perform at a consistent pace, and would likely be absent at least four times a month (R. 807). Nevertheless, the ALJ properly found Dr. Ranon's treatment records documented only routine follow-up care and failed to mention any significant abnormal mental status findings (R. 29, 833-34, 846, 851, 881, 909). Indeed, at one appointment Dr. Ranon found that Plaintiff's current medical regime controlled her anxiety and depression (R. 851). And as shown by the treatment records detailed above, Dr. Ranon's opinion was inconsistent with every other medical opinion of record, which demonstrated that Plaintiff had little if any mental limitations. The ALJ articulated good cause to disregard Dr. Ranon's opinion. Accordingly, I find that the ALJ did not err in determining Plaintiff's severe impairments.

*2. RFC and medical opinions of record*

The next issue Plaintiff raises is whether the ALJ erred when determining Plaintiff's RFC. But, as noted by the Commissioner, Plaintiff's actual argument concerns whether the ALJ properly evaluated the medical opinions of record and their assessments of Plaintiff's functional capacity. For instance, Plaintiff contends the ALJ improperly discounted Dr. Ranon's physical RFC assessment and erred by giving greater weight to the opinion of the state medical consultant, Dr. Efren Baltazar, and her treating physician, Dr. Geoffrey Stewart. In opposition, the Commissioner

maintains the ALJ properly evaluated the opinions of Drs. Ranon, Baltazar, and Stewart.

When evaluating medical opinions, the Social Security Regulations establish a hierarchy for determining the weight afforded each medical opinion. *Belge v. Astrue*, No. 3:09-cv-529-J-JRK, 2010 WL 3824156, at *3 (M.D. Fla. Sept. 27, 2010). Generally, "opinions of examining physicians are [] given more weight than nonexamining physicians; treating physicians receive more weight that nontreating physicians; and specialists on issues within their areas of expertise receive more weight than nonspecialists." *Id*. (internal citations and quotations omitted). As stated previously, an ALJ must give a treating physician's opinion substantial weight unless good cause is shown not to. *Winschel*, 631 F.3d at 1179. A consulting physician's opinion, however, is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (holding the opinions of consultative examiners are not entitled to deference "because as one-time examiners they were not treating physicians"). Nonetheless, "[t]he opinion of a consultative physician . . . is still a medical opinion deserving of consideration along with all of the other evidence." *Hindle v. Astrue*, No. 4:09cv422-RH/WCS, 2010 WL 4683996, at *15 (N.D. Fla. Oct. 6, 2010). When determining a claimant's RFC, the ALJ must consider all impairments and the extent to which the impairments are consistent with medical evidence and any medical opinions given by physicians, psychologists, or other acceptable medical sources, which indicate the nature of a person's impairments; this includes a consultive examiner's opinion. 20 C.F.R. § 416.945.

I find the ALJ considered all of Plaintiff's impairments in light of the medical evidence given by Plaintiff's physicians and properly weighed the opinions of Drs. Ranon, Baltazar, and Stewart. As for Dr. Ranon, the ALJ throughly discussed the questionnaire completed by Dr. Ranon as to Plaintiff's physical limitations and explained why he gave it no weight (R. 33). In that

9

questionnaire, Dr. Ranon opined that Plaintiff could walk less than 2 blocks, sit and stand one to two hours in an eight-hour day, could occasionally lift ten pounds, and would be absent from work more than four times a month due to Plaintiff's physical limitations (R. 804-05). The ALJ presented two specific reasons for discounting this opinion. First, the ALJ noted that Dr. Ranon's assessment was inconsistent with Dr. Ranon's own treatment records (R. 33). The ALJ found despite the limitations outlined in Dr. Ranon's assessment, his treatment records failed to identify that Plaintiff had any physical limitations (*Id.*). To the contrary, those records revealed that Plaintiff had no limitations in her motion, no joint or muscle pain, no muscle weakness, no neck pain, no swelling or redness in the joints, no cough, and no wheezing (*Id.*). The ALJ also pointed out that Dr. Ranon's progress notes revealed no significant physical findings with the exception of shortness of breath associated with a recent case of pneumonia and a more recent finding of bilateral leg swelling, which the ALJ took into consideration when determining Plaintiff's RFC (*Id.*). In sum, the ALJ found no information in Dr. Ranon's treatment records to support his conclusions. *See Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991) ("The treating physician's report may be discounted when it is not accompanied by objective evidence or is wholly conclusory.").

Next, the ALJ found that Dr. Ranon's assessment was inconsistent with the opinions of the other physicians of record. The ALJ noted that treatment records from the Heart and Vascular Center documented that Plaintiff had no muscle pain, no atrophy, no weakness, no reduced range of motion, no cough, no shortness of breath, no wheezing, and unassisted ambulation (*Id.*). Plaintiff was also advised to follow an aerobic regimen, which the ALJ found inconsistent with Dr. Ranon's assessment (*Id.*). Moreover, the ALJ noted that Dr. Stewart had released Plaintiff to moderate activity with only avoidance of overhead lifting and provided Plaintiff with documentation that she

10

was unable to return to work for six weeks until reevaluation (*Id.*). The ALJ interpreted this to mean that Dr. Stewart's restriction was not intended to be permanent in nature (*Id.*).

Other general examinations of Plaintiff revealed that she had full range of motion in her extremities, normal motor function, normal sensory exams, no generalized weakness, no numbness or tingling sensations in any extremity, no difficulty walking, no joint pain or swelling, normal range of motion in her neck and musculoskeletal region, normal gait, negative straight leg test, normal heel to toe walk, and she walked with normal speed and balance (R. 338, 343, 349, 375-76, 389, 437, 448). Additionally, although Plaintiff did have surgery to correct her neck pain, Plaintiff was said to be doing well postoperatively with excellent resolution of her radicular pain and she was told she could discontinue use of her neck collar (R. 568-70). Another consulting physician, Dr. Ricardo Vargas, also documented relatively benign physical limitations. After examining the Plaintiff, Dr. Vargas noted that Plaintiff had normal ambulation, was able to get on and off the exam table in a normal manner, could tie and untie her shoes, her gait was normal, her fine manipulation was normal, her grip strength was five out of five, she had normal range of motion in her joints, and despite some mild muscle tenderness in the cervical area, her musculoskeletal examination on the cervical spine was unremarkable (R. 628-29).

These relatively normal findings were noted by Dr. Baltazar in his RFC assessment and are consistent with Dr. Stewart's assessment that Plaintiff could return to moderate activity; thus, the ALJ gave greater weight to Dr. Baltazar and Dr. Stewart as their opinions were consistent with the medical evidence (R. 569, 796). The ALJ, therefore, articulated good cause to discount Dr. Ranon's assessment and did not err in giving greater weight to the opinions of Dr. Baltazar and Dr. Stewart. *See Phillips*, 357 F.3d at 1241 (good cause for disregarding a treating physician's opinion exists

when the evidence supported a contrary finding); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 874 (11th Cir. 2011) (finding the ALJ did not err in giving significant weight to the opinions of the state agency medical consultants whose opinions were consistent with the record evidence rather than the treating physician's opinions, which were contradicted by his own treatment records and the record evidence).

### 3. credibility

Plaintiff next argues that the ALJ erred by improperly evaluating her credibility. This argument apparently stems from the ALJ's failure to discuss a notice of determination of employment benefits, which indicated that Plaintiff was unable to work due to illness. Plaintiff claims that this evidence lends support to Plaintiff's arguments that her impairments significantly impact her work-related abilities.

Credibility determinations are the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). To aid ALJs in assessing credibility, the Eleventh Circuit has established a three-part "pain standard" that applies to claimants that attempt to establish a disability through their own testimony of subjective complaints. The standard requires evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain. *See Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991). When the ALJ decides not to credit a claimant's testimony as to his pain, the ALJ must articulate explicit and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Id.* at 1562.

The ALJ articulated several reasons for discounting Plaintiff's credibility. After noting Plaintiff's complaints of pain, the ALJ stated that he did not find the Plaintiff's "allegations concerning the limiting effects of her symptoms … credible in part, due to inconsistencies between them and the evidence of record." (R. 33). When making that conclusion, the ALJ specifically discussed Plaintiff's allegations that she could not work due to, among other things, her neck problems, lower extremity weakness, left hip pain, chest pain, shortness of breath, numbness, swelling, depression, and anxiety attacks (*Id.*). He concluded, however, that the medical records largely consisted of routine follow-up treatment and medication management and did not reveal the limitations Plaintiff suggested (*Id.*). Additionally, the ALJ noted that the medical records also refuted Plaintiff's allegations of medication side effects (R. 33-34).

Further, the ALJ did not err by not considering the notice of determination denying Plaintiff unemployment benefits from Florida's Agency for Workforce Innovation Unemployment Compensation Program when evaluating Plaintiff's credibility. "A decision by [another]… governmental agency about whether [Plaintiff is] disabled or blind is based on its rules and is not [the Social Security Administration's] decision about whether [Plaintiff] is disabled or blind." 20 C.F.R. §§ 404.1504 and 416.904. And that decision is not binding on [the Social Security Administration]. *Id.* Nonetheless, Social Security Ruling 06-3p and the Eleventh Circuit require the Commissioner to evaluate decisions by other government agencies and explain the consideration given those decisions. *See* SSR 06-3p; *Gonz v. Comm'r of Soc. Sec.*, No. 6:12-cv-614-ORL-GJK, 2013 WL 4494313, at *3 (M.D. Fla. Aug. 20, 2013). But, as pointed out by the Commissioner, the notice is not actually a determination of whether Plaintiff is disabled. The Court was unable to locate any authority and Plaintiff has failed to provide the Court with any authority requiring the

13

Court to evaluate such evidence. Thus, the ALJ had no duty to take the notice into consideration when evaluating Plaintiff's credibility.

### *4. steps four and five*

The last issue Plaintiff raises is that the ALJ erred at steps four and five by concluding Plaintiff was capable of returning to her past relevant work or in the alternative determining that Plaintiff could perform other jobs in the national economy. As support, Plaintiff asserts three arguments. Plaintiff's first argument, however, can be easily dispensed with. Plaintiff first argues the ALJ's determination at step four and five cannot be supported by substantial evidence because the ALJ erred by not finding her mental impairments severe, by improperly evaluating her RFC, and by improperly evaluating her credibility. This Court has already determined, as discussed in detail above, that the ALJ did not err at these steps; thus, Plaintiff's first argument fails.

Plaintiff's next two arguments challenge whether Plaintiff could actually perform the requirements of her past relevant work as a cashier or merchandise marker or, in the alternative, any of the positions identified by the ALJ at step five — a charge account clerk, surveillance systems monitor, or ticket checker. Plaintiff contends that her limited education combined with her severe mental impairments would prevent her from performing her past relevant work as a merchandise marker and cashier, or alternatively work as an account clerk or surveillance system monitor, given their reasoning skills level under the Dictionary of Occupational Titles ("DOT"). In addition, Plaintiff claims she could not perform the duties of a ticket checker because the position requires constant reaching, which is more than is permitted under her current RFC. The Commissioner counters that the ALJ properly relied on the vocational expert's ("VE')'s testimony that Plaintiff could perform her past relevant work, or alternatively, could perform other jobs that exist in

14

significant numbers in the national economy.

At step four of the sequential analysis, the ALJ must determine whether the claimant is capable of performing her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "A determination that a claimant can perform her past relevant work, and thus is not disabled, is appropriate where the claimant retains the [RFC] to perform the actual functional demands and job duties of a particular past job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Turner v. Astrue*, No. 8:08-cv-65-T-TBM, 2009 WL 804676, at *6 (M.D. Fla. Mar. 26, 2009). Plaintiff has the burden of establishing that she cannot return to her past kind of relevant work. 20 C.F.R. § 404.1520(e); *Jackson v. Brown*, 801 F.2d 1291, 1293-1294 (11th Cir. 1986). At step five, the ALJ is required to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if the claimant can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Here, as part of the five-step sequential evaluation process, the ALJ decided the case at step four and made an alternative step-five finding. In making the step four determination, the ALJ with the assistance of the VE compared claimant's RFC with the physical and mental demands of Plaintiff's relevant past work as a merchandise marker and cashier and determined that claimant was able to perform those jobs as generally performed (R. 34). And after finding the VE's testimony consistent with the DOT, the ALJ found Plaintiff capable of performing her past relevant work as a merchandise marker and cashier. In addition, the ALJ, again relying on the testimony of the VE, made an alternative finding that claimant was capable of performing other jobs in the national economy such as a charge account clerk, surveillance systems monitor, or ticket checker based on Plaintiff's RFC, age, education, and past work experience (*Id.*).

15

As for Plaintiff's argument that her mental limitations prevent her from performing the jobs identified by the VE, as discussed above, Plaintiff's mental limitations do not cause any functional limitations. And even still, the VE testified that Plaintiff could perform the jobs identified by the VE if Plaintiff were limited in understanding, remembering, and carrying out only unskilled work as she contends (R. 84-85). The VE similarly testified that Plaintiff was capable of performing the duties of a ticket checker under Plaintiff's current RFC. And although Plaintiff argues, without citation to authority, that the position of a ticket checker requires constant reaching, this is not inconsistent with Plaintiff's RFC. Under Plaintiff's RFC, the Plaintiff remained able to occasionally reach overhead and frequently otherwise reach. The Plaintiff does not point to any evidence that the position of a ticket checker requires Plaintiff to constantly reach overhead. Therefore, the ALJ was allowed to rely on the VE's opinion that Plaintiff could perform her past relevant work as a merchandise marker, and alternatively other work in the national economy as a ticket checker, cashier, account clerk, and surveillance system monitor given her RFC. *See* 20 C.F.R. § 404.1560(b)(2)(stating that a Commissioner may rely on a VE to "offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of claimant's past relevant work."); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)(A "vocational expert is an expert of the kinds of jobs an individual can perform based on his or her capacity and impairments."). Accordingly, substantial evidence supports the ALJ's findings at steps four and five.

*D.     Conclusion*

For the reasons stated, it is hereby

16

RECOMMENDED:

1.  The decision of the Commissioner be AFFIRMED and judgment be entered in favor of the Commissioner.

DONE AND ORDERED in chambers at Tampa, Florida on April 23, 2014.

_Mark A. Pizzo_
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

### **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).